**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HOWARD H. WILLIS #473273,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:26-cv-00643** |
| | ) | |
| **QUYLEA MUCHISON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Howard H. Willis ("Willis"), an inmate of the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, filed a pro se "Americans With Disability Act Complaint" (Doc. No. 1) that asserts claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), the U.S. Constitution (under 42 U.S.C. § 1983), and state law. (Id.) Willis paid the full civil filing fee on May 15, 2026. (Doc. No. 1-2.) This case cannot proceed without additional action by Willis.

### I. MOTION TO AMEND/CORRECT (DOC. NO. 6)

Willis filed a Motion to Amend/Correct (Doc. No. 6) on June 8, 2026, asking that this Court "exchange [the provided] Exhibit 2 with the previous one." (Id. at 1.) Exhibit 2 contains an affidavit of an "Officer Middleton," who alleges he witnessed cuff marks on Willis's wrists, which were allegedly caused by Corporal Muchison. (Doc. No. 6-1 at 1.) Willis's Motion to Amend/Correct (Doc. No. 6) will be granted.

### II. SCREENING OF THE COMPLAINT

The Complaint (Doc. No. 1) is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.

1

## A. PLRA SCREENING STANDARD

In cases filed by prisoners, the Court must conduct an initial screening and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" or any portion of it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; see also 42 U.S.C. § 1997e(c).

The Court must construe a pro se complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## B. ALLEGED FACTS

The allegations of the Complaint are assumed true for purposes of the initial screening required by the PLRA.

Willis has a hearing impairment which requires the use of hearing aids. (Id. at 12.) Those hearing aids only work on close contact conversations and are affected by simultaneous background noise. (Id.) The staff in Unit 2 at RMSI, including Unit 2 Corporal Quylea Muchison ("Corporal Muchison"), are aware of Willis's hearing impairment, and he has a sign on his door

2

informing individuals at the prison of his hearing impairment. (Id.) Willis alleges his hearing impairment "limits his major life activity of communicating with others." (Id.)

Willis also suffers from diabetes, and he was given an "AVO[1] from the medical department" to allow him bathroom access as needed due to the medication he takes. (Id.) Willis spoke to Unit 2 Manager Savannah Rood ("Manager Rood"), and she told him he could wear a diaper. (Id. at 13.) Willis informed Manager Rood that he needed access to a bathroom rather than a diaper. (Id.) RMSI Warden Ken Nelson ("Warden Nelson") also said Willis could wear a diaper, and he said security overrides the AVO. (Id.)

Willis has a court order that allows him to have phone calls with attorneys on Fridays. Those phone calls occur in an "office area" and are supposed to be confidential. (Id.) However, after a phone call between Willis and his attorney, Corporal Muchison "got smart with Willis about things said on the private phone call," and "[t]he issue of the bathroom and AVO was discussed." (Id.)

Days later, Corporal Muchison "intentionally locked Mr. Willis out of the housing pod and left him on the recreation yard for 2½ hours." (Id.) Corporal Muchison is "required by police and the law" to do her security rounds every 30 minutes, but she did not do so. (Id.)

Willis filed a grievance against Corporal Muchison regarding the incident, but the grievance board did nothing. (Id. at 14.) Corporal Muchison did not lock Willis out after this incident, but she instead failed to open his door every 30 minutes for bathroom use "as the law and

---

[1] Willis does not define for the Court what an "AVO" is. (See Doc. No. 1.) According to the Court's own research, "AVO" appears to be an abbreviation of "Avoid Verbal Order." Cf. Meeks v. Tenn. Dep't of Corr., No. 1-07-cv-0013, 2010 WL 3522977, at *2 n.1 (M.D. Tenn. Aug. 2, 2010) (explaining that "[p]rison medical staff issue AVOs to inmates who have a medical reason to avoid a verbal order from a prison official.").

policy requires." (Id.) Willis implies he had to relieve himself in his cell, as he states he had "Pod Rockman to clean up his mess as the result of being denied bathroom access." (Id.)

Corporal Muchison listened again to one of Willis's confidential phone conversations and "tried to pick an argument" with Willis similarly to before. (Id.) Corporal Muchison then locked Willis in his cell in solitary confinement on September 12, 2025, claiming Willis "said something to her during count time." (Id.) "The black African lady was with . . . Muchison and stated she did not hear Willis say anything." (Id.) Willis filed a grievance regarding this incident and was told the matter would be investigated. (Id.) No disciplinary action was taken against Corporal Muchison. (Id.)

Willis asked Corporal Muchison to bring him water because, according to Willis, the water in the cells is not fit to drink and because he is diabetic. (Id. at 14-15.) Corporal Muchison "did not walk her rounds as policy and the law demands," and Willis's call light was on for over two hours without answer. (Id. at 15.) Willis states Corporal Muchison's conduct is not limited to him. (Id.)

C. ANALYSIS

Willis names seven Defendants: (1) Corporal Muchison; (2) Manager Rood; (3) Warden Nelson; (4) RMSI Associate Warden Michael Keys ("Warden Keys"); (5) Tennessee Department of Correction ("TDOC") Commissioner Frank Strada ("Commissioner Strada"); (6) John Doe; and (7) Jane Doe[2]. (Doc. No. 1 at 1-3.)

---

[2] Willis does not specify any claims against Defendants "John & Jane Doe" despite naming them in the Complaint. (See Doc. No. 1.)

Willis asserts the following claims against the following Defendants in their official capacities[3]: (1) violations of the Eighth Amendment against Corporal Muchison, Manager Rood, Warden Nelson, and Commissioner Strada; (2) failure to provide reasonable accommodations in violation of Title II of the ADA against Corporal Muchison, Manager Rood, Warden Nelson, and Commissioner Strada[4]; (3) disability discrimination[5] in violation of Section 504 of the Rehabilitation Act against Corporal Muchison, Manager Rood, Warden Nelson, Warden Keys, and Commissioner Strada; and (4) perjury against Corporal Muchison, Manager Rood, Warden Nelson, Warden Keys, and Commissioner Strada. (Doc. No. 1 at 5-12, 19-21.)[6]

1. Commissioner Strada

a. 42 U.S.C. § 1983

The Complaint claims that Willis's constitutional rights, including his rights under the Eighth Amendment (Doc. No. 1 at 19-20) and "his ADA disability protected in the United States Constitution" (id. at 18), were violated by RMSI employees on Commissioner Strada's watch. (Id. at 11-12.) These claims are liberally construed as claims under 42 U.S.C. § 1983, consistent with the Complaint's scattered references to that statute's utility for remedying violations of federal

---

[3] Willis makes no individual capacity claims against any of the Defendants. (See id.)

[4] In the Complaint, Willis refers to both Title II of the ADA and Title III of the ADA as it pertains to his allegations against Commissioner Strada. (Doc. No. 1 at 11.) Willis states, "Title III of the ADA, [sic] authorizes suits by private citizens for money damages against public entities that violate [42 U.S.C. §] 12132 . . . Title II of the ADA validly abrogated State sovereign immunity . . . ." (Id.) Because Title II, not Title III, of the ADA authorizes lawsuits by private individuals alleging violations of Section 12132 against public entities, the Court will refer to Title II of the ADA as it pertains to the allegations within the Complaint.

[5] Willis lists "42 U.S.C. § 1213(i)" alongside his Section 504 allegations. (Doc. No. 1 at 8-10, 19-21.) The Court is unable to discern the statute or regulation to which Willis is referring.

[6] Willis does not allege Commissioner Strada personally committed any of the violations claimed in the Complaint, but instead makes his allegations against Commissioner Strada pursuant to the doctrine of vicarious liability. (See Doc. No. 1.)

5

rights. (Id. at 6-7, 17); see also Gregson v. Rhode Island Dep't of Corr., No. CV 24-425 WES, 2025 WL 579615, at *3 (D.R.I. Feb. 21, 2025) (construing a pro se prisoner complaint "as alleging violations of the ADA and the Rehabilitation Act under § 1983," though such claims are only properly brought "under those statutes in themselves"). Willis alleges that Commissioner Strada "act[s] as T.D.O.C.," and states he "is in charge of and is responsible for all employees[sic] conduct . . . ." (Doc. No. 1 at 11-12.) Willis seeks both compensatory and punitive damages against Commissioner Strada in his official capacity. (Id. at 11, 21.)

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under this Section, a plaintiff must allege and show two elements: (1) that the plaintiff was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Id.; Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

An official-capacity claim against an individual is, in essence, a claim against the entity the person represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.") (internal citation omitted); Peatross v. City of Memphis, 818 F.3d 233, 241 (6th Cir. 2016) (citing Essex v. Cnty. of Livingston, 518 F. App'x 351, 354 (6th Cir. 2013)). Commissioner Strada represents TDOC, making any official-capacity claim against him equivalent to that of a claim against TDOC itself. TDOC is an agency or arm of the State of Tennessee. Wingo v. Tenn. Dep't of Corr., 499 F. App'x 453, 454 (6th Cir. 2012) (citations omitted); Hix v. Tenn. Dep't of Corr., 196 F. App'x 350, 355 (6th Cir. 2006); see Tenn. Code Ann. § 4-3-101(5) (listing Department of Correction as an

6

administrative department of the state). Because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), the claim against Commissioner Strada is not cognizable. Hix, supra. Thus, Willis's Eighth Amendment claim under 42 U.S.C. § 1983 against Commissioner Strada will be dismissed with prejudice.

Even if the Section 1983 claim against Commissioner Strada were capable of construction as a personal-capacity claim, it asserts only his vicarious liability for the misconduct of his subordinates, through the doctrine of respondeat superior. (See Doc. No. 1; See Jones v. City of Detroit, Mich., 20 F.4th 1117 (6th Cir. 2021).) "The doctrine of respondeat superior does not apply in section 1983 lawsuits to impute liability on supervisory personnel." Wingo, 499 F. App'x at 455.

> In order to find supervisory personnel liable [under Section 1983], a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, Dunn v. State of Tenn., 697 F.2d 121, 128 (6th Cir. 1982), or at least acquiesced in the alleged unconstitutional activity of a subordinate, Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).

Id. Willis states that Commissioner Strada "is the responsible person acting as T.D.O.C. and is in charge of and is responsible for all employees [sic] conduct." (Doc. No. 1 at 11-12.) Willis further states that Defendants and other employees are "under the directional [sic] and control of the Commissioner . . . [,]" and Commissioner Strada "is an accomplist [sic] to [all employees'] misconduct by covering it up." (Id. at 11.)

The Complaint fails to allege that Commissioner Strada was personally involved in any unconstitutional conduct taken by his subordinates. (See Doc. No. 1.) Neither does the Complaint allege that Commissioner Strada acquiesced in any alleged unconstitutional activity. (See id.)

7

Thus, even if the Complaint sought to impose personal liability on Commissioner Strada, it would fail to state a claim upon which relief can be granted.

*b. Title II of the ADA, Section 504 of the Rehabilitation Act, and Perjury Allegations*

Willis asks this Court to hold Commissioner Strada vicariously liable for his subordinates' actions, alleging they constitute violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and perjury. (Doc. No. 1 at 11-12, 21.)

Title II of the ADA addresses discrimination on the basis of disability in the provision of public services. 42 U.S.C. § 12131-12165. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id. § 12132. A public entity is "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" Id. § 12131(1)(A)-(B). Because Title II of the ADA is a close equivalent to Section 504 of the Rehabilitation Act, claims under these statutes "generally are evaluated together." Knox Cnty., Tenn. v. M.Q., 62 F.4th 978, 999-1000 (6th Cir. 2023) (quoting M.G. ex rel. C.G. v. Williamson Cnty. Schs., 720 F. App'x 280, 287 (6th Cir. 2018)).

Willis, however, cannot seek damages against Commissioner Strada under Title II of the ADA and the Rehabilitation Act through the doctrine of vicarious liability. See Jones v. City of Detroit, Mich., 20 F.4th 1117 (6th Cir. 2021) (holding that vicarious liability does not apply to Title II of the ADA or the Rehabilitation Act). Therefore, Willis's ADA and Section 504 claims against Commissioner Strada will be dismissed with prejudice.

Lastly, as best as the Court can discern, Willis seeks to hold Commissioner Strada vicariously liable for the perjury claims Willis brings forth against Corporal Muchison, Manager

8

Rood, Warden Nelson, and Warden Keys as they allegedly violated their oath of employment. (Doc. No. 1 at 19-21.) However, there is no private right of action for perjury. Kim v. City of Ionia, No. 19-1389, 2019 WL 11662557, at *1 (6th Cir. 2019). Willis's remaining claim of perjury against Commissioner Strada will be dismissed with prejudice.

Commissioner Strada will therefore be dismissed as a Defendant in this case.

2. Corporal Muchison, Manager Rood, Wardens Nelson and Keys, and "John & Jane Doe"

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim." Additionally, Rule 8(a)(3) requires that a pleading contain "a demand for the relief sought, which may include relief in the alternative or different types of relief."

Willis asserts no claims or relief against "John & Jane Doe." (See Doc. No. 1.) In fact, the only mention of "John & Jane Doe" in the Complaint is found within the case caption on the first page. (Id. at 1.) Because Willis has failed to comply with Rule 8(a) as to "John & Jane Doe," they will be dismissed as Defendants in this case.

Willis alleges 42 U.S.C. § 1983, Title II of the ADA, Section 504, and perjury claims against Corporal Muchison, Manager Rood, and Warden Nelson. (Doc. No. 1 at 19-20.) Willis also alleges Section 504 and perjury claims against Warden Keys. (Id. at 20-21.) However, Willis does not request any relief as to any of those Defendants, as he did with Commissioner Strada. (See Doc. No. 1.) In Section II. of his Complaint, Willis wrote, "Will v. Michigan . . . reaffirmed that the State officers who are violating a federal law may be sued purely for injunctive relief." (Id. at 2.) However, Willis does not say he is seeking injunctive relief or as to whom. (See Doc. No. 1.) In the absence of "a demand for the relief sought," Fed. R. Civ. P. 8(a)(3), the claims as to Corporal Muchison, Manager Rood, Warden Nelson, and Warden Keys are subject to dismissal.

9

See <u>Davis v. Village of Greenfield</u>, No. 1:25-cv-476, 2025 WL 2880238, at *4 (S.D. Ohio Oct. 9, 2025) (collecting cases).

Considering his pro se status, the Court finds that it would be appropriate to permit Willis to amend the Complaint as to these claims and Defendants, specifying exactly what relief Willis seeks as to each, no later than 30 days after the entry of this Order. <u>See</u> <u>LaFountain v. Harry</u>, 716 F.3d 944, 2013 WL 2221569 (6th Cir. 2013) (overruling <u>McGore v. Wrigglesworth</u>, 114 F.3d 601 (6th Cir. 1997), to the extent that <u>McGore</u> held that, when the PLRA required dismissal of a prisoner's claim, a district court could not grant leave to amend; vacating and remanding the district court's dismissal of some claims to determine whether to allow <u>LaFountain</u> to amend his complaint which was dismissed pursuant to the PLRA screening).

All relevant claims, Plaintiffs, Defendants, and facts shall be set forth in the proposed amended complaint; Willis cannot incorporate by reference his prior allegations. M.D. Tenn. R. 15.01(b). The Court will not piece together multiple complaints and attachments to each.

### III. MOTIONS TO APPOINT COUNSEL (DOC. NOS. 7 & 10)

On June 29, 2026, Willis filed a Motion to Appoint Counsel (Doc. No. 7), stating that he is a "75 year old man . . . [who has] health problems." (<u>Id.</u> at 1.) Willis states he recently suffered a stroke and is "unable to do the work needed in this case." (<u>Id.</u>) Willis filed a second Motion to Appoint Counsel (Doc. No. 10) on July 27, 2026, simply stating, "Please issue an order for an attorney to be appointed so this lawsuit can go forward." (<u>Id.</u> at 1.)

"The appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." <u>Lanier v. Bryant</u>, 332 F.3d 999, 1006 (6th Cir. 2003) (citing <u>Lavado v. Keohane</u>, 992 F.2d 601, 604-05 (6th Cir. 1993)). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under

10

exceptional circumstances. <u>Lavado</u>, 992 F.2d at 604-05.  A district court considers two things when deciding whether exceptional circumstances exist: (1) the type of case and (2) the ability of the pro se litigant to represent himself or herself, with the latter involving a determination as to the nature of the factual and legal issues involved. <u>Id.</u> at 606 (The "<u>Lavado</u> factors").

Thus far in this case regarding Willis's civil rights, Willis has prepared and filed a Complaint (Doc. No. 1), including 190 pages of attachments to the Complaint (Doc. Nos. 1-1 through 1-10), a Request for an Emergency Hearing for an Order of Protection (Doc. No. 5), a Motion to Amend/Correct (Doc. No. 6), a Motion to Appoint Counsel (Doc. No. 7), a Letter (Doc. No. 9), and a second Motion to Appoint Counsel (Doc. No. 10.) Although he states in his first Motion to Appoint Counsel that he recently suffered a stroke (Doc. No. 7 at 1), Willis has offered no information to the Court regarding his condition and how it currently affects his ability to litigate this case. (<u>See</u> Doc. No. 7.) Furthermore, Willis offers no additional information in his second Motion to Appoint Counsel (Doc. No. 10) setting forth any potential exceptional circumstances that would necessitate the appointment of counsel. (<u>See</u> <u>id.</u>) Consequently, the <u>Lavado</u> factors weigh in favor of denial of Willis's motion for the appointment of counsel. <u>Hurst v. Holloway</u>, No. 3:17-cv-00661, 2018 WL 2388550, at *2 (M.D. Tenn. May 25, 2018).

The Court finds that Willis has not demonstrated exceptional circumstances warranting the appointment of counsel at this time. Thus, his Motions to Appoint Counsel (Doc. Nos. 7 & 10) will be denied without prejudice. However, Willis may renew his request later, if appropriate, pending his compliance with the requirements of this Order.

### IV. CONCLUSION

Willis's Motion to Amend/Correct (Doc. No. 6) is **GRANTED**.

Commissioner Strada is **DISMISSED** as a Defendant in this case.

"John & Jane Doe" are **DISMISSED** as Defendants in this case.

Willis **MUST** amend the Complaint no later than **30 DAYS** from the date this Order is entered on the docket as to Corporal Muchison, Manager Rood, Warden Nelson, and Warden Keys, specifying what relief Willis seeks as to each.

Willis's Motions to Appoint Counsel (Doc. Nos. 7 & 10) are **DENIED WITHOUT PREJUDICE**.

The Court acknowledges the receipt of Willis's Request for an Emergency Hearing for an Order of Protection (Doc. No. 5.) This Request will be **HELD IN ABEYANCE** pending Willis's compliance with this Order.

Willis is cautioned that failure to comply with this Order by the above deadline (or request an extension of the 30-day period for compliance before it expires) may result in the dismissal of this case for want of prosecution and failure to follow an Order of the Court, Fed. R. Civ. P. 41(b), as well as for the reasons set forth above.

Failure to keep the Court apprised of any change in Willis's address of record may also result in dismissal. M.D. Tenn. R. 41.01(b).

Resources for pro se litigants are available free of charge on the Court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

12